Smith v. McNamara.

JUDSON SMITH v. MICHAEL McNAMARA.

(GENERAL TERM, THIRD DEPARTMENT, DECEMBER, 1870.)

Where the event of an action between adjoining owners of land depended upon the location of their boundary line, and the plaintiff proved declarations in his favor respecting the line, made by the defendant's grantors, while owning and in possession of the undisputed premises of the defendant, and the defendant was allowed to prove declarations to the contrary, of the same parties, during the same time, it seems the latter declarations were admissible, as tending to contradict the plaintiff's evidence.

And *held*, that the declarations in favor of the defendant were competent evidence to show the extent of the possession claimed by his grantors; and that this was so, although they might not, at the time of the declaration, have been in actual occupation of the disputed territory, or upon or in view of the disputed line.

Whether a grantee of land can be estopped from asserting his right to the land conveyed by his deed, by reason of declarations of his grantor, while owning the premises, to a purchaser of adjoining lands, respecting the location of the boundary line, *quere.*

Where the purchaser's deed covers no part of the disputed ground, the case should at least be clear and free from doubt, and evidence at all conflicting upon the character of the declarations should be submitted to the jury.

An erroneous boundary line run between adjoining owners, who have no dispute as to the true line, is not a settlement of a disputed line; and acquiescence in the erroneous line, for less than twenty years, does not preclude original owners, or their grantees, from claiming a different line.

EXCEPTIONS ordered to be first heard at General Term. The cause was tried at the Broome county circuit in September, 1868, before the Hon. WILLIAM MURRAY, one of the justices of this court, and a jury. The action was for trespass in cutting wood upon a piece of land, of about four acres in extent, situated in lot No. 21 in Clinton and Melcher's Patent, in Broome county. The parties were adjoining proprietors, the plaintiff owning the north part, and the defendant the south part of the lot. Both derived title from William Smith, who formerly owned the whole of lot 21, which consisted of 195½ acres. In 1836, in April, Smith deeded to John J. Enders the whole of the lot, excepting fifty acres in the form of a square, in the south-west corner of the lot, which about the same time he conveyed to Adam J. Steiner. In January, 1837, John J. Enders conveyed to Jeremiah Enders, his son, 100 acres of the north part of lot No. 21, a description of which is sufficiently given in the opinion. The premises were conveyed subsequently to several successive grantees, and in 1853 to the plaintiff by the same description. In 1840 John J. Enders conveyed to Adam J. Steiner the balance of the land, being forty-five and a half acres. Adam J. Steiner died in 1854, and it was conceded that by virtue of several deeds introduced in evidence the defendant became the owner of all the land in lot 21, which was owned by Steiner at the time of his death. Steiner lived on the premises until his death. The question between the parties was, how far to the south the plaintiff's southerly line extended. In 1837 a line was run across the lot and trees marked, which it was claimed was acquiesced in by the parties and established by their consent, and which was known as the Chambers line. This was disputed on the trial, and there was conflicting evidence on the subject. This line would give the plaintiff 104¼ acres. After Steiner's death, in 1857 or 1858, his heirs procured one Wentz to remeasure the north lot, and it being ascertained that the Chambers line included more than 100 acres, he ran a line north of the Chambers line, which was known as the Wentz line.

The strip of land in dispute is between these two lines, the plaintiff claiming that the Chambers line had been established by the acts of the original parties as the south line, and the the defendant that such was not the fact. Evidence was introduced by both parties, showing the acts and declarations of Adam J. Steiner and his heirs while owners of the land, and there was a conflict as to the most material facts in the case.

Questions were raised as to the admission of testimony and the charge of the judge, to which exceptions were taken, which are sufficiently stated in the opinion. The judge was also requested to direct a verdict in favor of the plaintiff, on the ground that the defendant was estopped by the acts and representations of Adam J. Steiner to the plaintiff from setting up a different boundary line than the one pointed out to the plaintiff, and to charge the jury as a matter of law that the plaintiff was entitled to recover, which requests were refused and exceptions duly taken. The jury found a verdict in favor of the defendant. A case of exceptions was made, which were ordered to be first heard at General Term.

*Bartlett & Sessions* for the plaintiff, cited 15 Johns., 470; 18 Wend., 157; 2 Johns., 37; 10 N. Y., 319; 46 Barb., 524; 3 Barb., 352; 9 Paige, 168; 19 N. Y., 298; 19 Wend., 176; 1 Maine, 220; 12 Mass., 469; 1 Yerger (Tenn.), 496; 17 Mass., 212; 17 Conn., 399; 1 Johns., 340; 15 N. H., 563; 4 id., 213; 1 Comst., 525; 14 Wend., 626; 14 N. H., 20; 4 Johns., 230; 9 Miss., 797; 8 Allen (Mass.), 100; 1 id., 77, and cases above cited; 12 Pick., 533; 8 Allen, 25, 100; 17 Conn., 399; 15 N. H., 563; 24 Pick., 242; 19 Conn., 269; 10 N. Y., 207; 1 Devereau Law R., 208; 1 Appleton, 19 Maine, 418, a strong case; 3 Paige, 546, 555; 2 Parsons' Con., 340*g*; 4 McLean., 272; 35 Barb., 172; 4 Harrison, N. J., 82; 33 N. Y., 658.

*L. Seymour*, for the defendant. (1 Cowen & Hill's Notes, ed. of 1839, 596, 601; *Daggett* v. *Shaw*, 5 Metcalf's Reports,

223; *Wood* v. *Foster,* 8 Allen's Reports, 24; *Abeel* v. *Van Gelder,* 36. N. Y. R., 513; *Vosburgh* v. *Teator,* 32 N. Y., 561; *Raynor* v. *Timerson,* 51 Barb., 517; *Townsend* v *Hayt,* id., 334; *Waugh* v. *Waugh,* 28 N. Y. R., 102; *Rockwell* v. *Adams,* 16 Wend., 302; *Clark* v. *Wethey,* 19 Wend., 320; *Clark* v. *Baird,* 5 Seld., 183; *Terry* v. *Chandler,* 16. N. Y. R., 354; *Baldwin* v. *Brown,* id., 359.)

Present—MILLER, P. J., HOGEBOOM and PARKER, JJ.

By the Court—MILLER, P. J. The controversy in this case relates to a disputed boundary line between proprietors of. adjoining lands. I think there was no error upon the trial in admitting the declarations of Adam J. Steiner and his heirs after his decease as to the location of the line in question. Upon the trial the plaintiff claimed that the survey of the Chambers line was a practical location of a boundary line, and, even if erroneous, was binding upon the defendant, by reason of the long acquiescence of Steiner and his family in the same. Considerable evidence was introduced to establish that the Steiners had recognized this line as the true boundary line between them and the adjoining owner; and, for the purpose of contradicting this evidence, and to establish a different state of facts, so far as it could be done by the declarations of the parties, I think that the evidence was admissible. If it was competent to prove that Steiner and his heirs claimed only to a certain line, it was, for the same reason, it seems to me, proper to show that they also claimed a different line from the one attempted to be shown by the plaintiff, and thus to rebut the plaintiff's evidence on the subject. Independently, however, of this view of the question, it was competent to prove the declarations of the persons under whom the defendant claimed, while they were, or claimed to be, owners of the land, as to the extent of their claim. This doctrine was expressly held in *Abeel* v. *Van Gelder* (36 N. Y., 513). This rule is not in conflict with the doctrine that declarations of the grantor, made in disparagement of his own title, are admissible.

Nor was it, in my opinion, essential to the introduction of the declarations proven to establish primarily that they were made while the parties were in the actual occupation of the disputed territory.   Most of the declarations were made on or near the land, while engaged in describing or pointing out the line; but it is enough that the parties who made them were, or claimed to be, owners, or had title *prima facie*, and either the actual or a constructive possession of the land. In the determination of controversies of this character, it is often an important element to prove what the parties claimed as to the disputed line; and I do not understand that, in such cases, it is absolutely essential to the introduction of the testimony to show that the parties occupied and were on the land at the time.

The point made in the requests to charge that Adam J. Steiner, and those claiming under him, are estopped from setting up any other or different boundary than the Chambers line, and that the court should have directed a verdict in favor of the plaintiff, is not well taken.   There was proof on the trial to show that Steiner had been present and helped run the Chambers line, and had pointed out this line to Van Evera, the plaintiff's immediate grantor, before the plaintiff purchased the same, and the plaintiff swears, that in making the purchase he relied upon the representations of Steiner. The evidence on the subject was somewhat conflicting, and there was proof that the plaintiff had made statements to the effect, that he did not claim up to the Chambers line, but only 100 acres, and that he only wanted what his deed called for.   It was, therefore, exceedingly doubtful, whether the plaintiff purchased on any such representations.   Conceding that an owner of land may, in this manner, deprive himself of the right conveyed, viz., a written or paper title, and that the doctrine of estoppel applies, yet the most, I think, which can be claimed from the testimony, is that it was a question of fact for the jury to decide, whether Steiner thus waived his rights.   The plaintiff's deed only covered 100 acres of land, and it should be a very clear case, which would authorize

a court to extend the boundaries of his claim beyond those limits, and to hold that the defendant was estopped from contesting it by the verbal declarations of the grantor under whom he holds. It is manifest, I think, that there was no error committed by the judge in refusing to charge according to the requests made.

The judge upon the trial charged, among other things, that "the deeds under which plaintiff holds, cover 100 acres on the north part of the lot, to come off of the north part of the lot, without giving any distances so as to control in cutting off this hundred acres, but leaving, the quantity as the only data by which the south boundary, or in other words, division between the two parts, can be ascertained."

It is claimed by the counsel for the plaintiff, that the court ignored that portion of the deed from John J. Enders to Jeremiah Enders, which conveyed 100 acres of land to be taken from the north side of lot No. 21, which contained a provision, that "the said 100 acres of land are to be divided from the residue of said lot by a line to be run parallel with the north line of said lot." The first part of the charge excepted to was correct, and it is only the latter portion, which refers to the "quantity as the only data," which is liable to objection. The exception was general, and not specific, and as the whole is not erroneous, I am inclined to the opinion that it is not well taken, for this reason. As the counsel did not limit his exception to the portion which was erroneous, or direct the attention of the court to the point he is not in a position to claim that the judge erred in this respect. Had he requested the court to charge, that the deed under which he claimed contained this provision, and to correct the error, undoubtedly the request would have been granted. As he failed to do this, he has not brought himself within the rule applicable to exceptions in such cases.

But, if it may be assumed that the court erred in this respect, I am inclined to think that the error was one which worked no injury to the plaintiff, and, therefore, is no ground for a new trial. There was no dispute upon the trial as to the north,

east and west lines of the lot in question; and, as the proof established that, by running the south line according to the provision referred to in the deed, it would give the plaintiff only one hundred acres, and thus deprive him of the land upon which the trespass was alleged to have been committed, it is difficult to see how the plaintiff could be injuriously affected by the charge of the judge to which exception was taken.

The question whether there was a practical location of a boundary line, according to the Chambers line, so called, and an acquiescence in said line, was a question of fact entirely for the jury, and properly intrusted to them.

The other questions raised are not of sufficient importance to require particular comment.  I discover no error in any of the rulings on the trial; and judgment must be ordered for the defendant, with costs.

PARKER, J.  It is not disputed that the *locus in quo* is covered by the paper title of the defendant, and not by that of the plaintiff.   Plaintiff pretends to no title by twenty years' adverse possession.

The Chambers line was not fixed by settlement of a disputed line, as there was no dispute in reference to the line when it was run, or before; so that no acquiescence, short of twenty years' occupation, in accordance with it, could make it the line, if it was incorrect.   (*Vosburgh* v. *Teator*, 32 N. Y., 561.)

In this view the defence is complete, however the questions raised by exceptions to evidence are decided; and defendant is entitled to judgment on the verdict.

Motion denied.