SARAH J. BURKE AND MARY F. BURKE, RESPONDENTS, v. WILLIAM H. JACKSON, APPELLANT.

*Purchase-money mortgage — description therein of the land — not competent in evidence in an ejectment suit as being part of the transaction of purchase, or as a declaration of the purchaser while in possession.*

A piece of land was conveyed, bounded entirely by adjoining streets and premises, the purchaser gave back a purchase-money mortgage, which contained a similar description, and also stated the width of the premises covered thereby.

In an action of ejectment, involving the question of the width of the premises, the purchaser offered in evidence the mortgage which had been given by him, which it was claimed was competent evidence, first, as being a part of the same transaction with the deed; and, second, as a declaration by the party in possession as to the extent and claim of his possession.

*Held,* that the mortgage was not competent upon either ground. (MAYHAM, J., dissenting.)

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Montgomery on the 3d day of July, 1889, with notice of an intention to bring up for review, upon such appeal, an order, entered in said office on the 27th day of June, 1889, denying a motion, made by the defendant upon the minutes of the court before which the action was tried, to set aside the verdict of the jury and for a new trial.

The action was brought to trial before the court and a jury at a Montgomery Circuit on the 14th day of June, 1889, and involved the question as to the line of division between the lands of the plaintiffs and of the defendant.

*P. J. Lewis,* for the appellant.

*Z. S. Westbrook,* for the respondents.

LEARNED, P. J. :

This is an action of ejectment to recover a strip of land about one foot wide and about ninety-six feet long. The question is how wide the lot of plaintiffs really is. The plaintiffs claim under a deed from French to their ancestor, which describes the lot as bounded : " Northerly by Grove street; easterly by. Daniel Leffert's lot ; southerly by Waterman Sweet's lot, and westerly by a lane," giving no other description and no dimensions.

Burke, the grantee, the same day gave a mortgage to French, described as a purchase-money mortgage, describing the land mortgaged as bounded : " Northerly by Grove street; easterly by Daniel Lefferts' lot ; southerly by Waterman Sweet's lot, and westerly by a lot of the party of the second part" (viz., French), and further stating that the lot thereby conveyed was " fifty-one feet wide on Grove street."

This mortgage the plaintiffs gave in evidence on the trial, against defendant's objection, in order to sustain the plaintiffs' claim that their lot was fifty-one feet wide on Grove street. The defendant's lot lies on the easterly side of plaintiffs' lot. The plaintiffs claim that this mortgage, executed by their ancestor to French, is competent. 1st. As being part of the transaction with the deed. 2d. As a declaration by a party in possession as to the extent and claim of his possession.

It does not appear that defendant derived title either from French or from Burke. Therefore, the transaction between them was not binding on him. The giving back a purchase-money mortgage by Burke could not increase the title which he had received from French, especially as against a stranger.

The deed bounded the land easterly by Lefferts, westerly by a lane. The mortgage described the western boundary differently, yet it might mean the same thing. The doctrine that a deed and the purchase-money mortgage are to be construed together as one act does not apply. That doctrine only indicates the simultaneous character of the transactions, showing that no outside rights can come between. But the doctrine does not mean that the mortgage can in any way increase or diminish, as against a third party, the amount of land conveyed by the deed. A mortgagor may be very willing to mortgage land twice as large as that described in the deed

to him, but the mortgagee on foreclosure would get no more than the deed had conveyed.

Declarations of former owners have been admitted to show the nature of their claim, or to show its extent, or to show where boundaries were. But it does not seem to us that this mortgage comes within the rule. At the best this is only an assertion by Burke that the description in a deed to him embraced fifty-one feet. How that can be evidence against the defendant we do not see. Burke might as well have said that the lot mortgaged was 100 feet on Grove street, which would have taken all of defendant's lot, and would have been an easy way of getting title to another's property.

We have examined the cases cited by the plaintiffs to sustain the admission of the mortgage. They seem to us clearly distinguishable from the present case. The doctrine here asserted is that one, by executing a mortgage on another's land to a third party, can acquire title thereto, or at least can show, as against such owner, a possession thereof. If authority is needed to the contrary, it may be found in *Armstrong* v. *Du Bois* (90 N. Y., 95, at 104).

The judgment should be reversed, new trial granted, costs to abide event.

LANDON, J., concurred.

MAYHAM, J. (dissenting):

This is an appeal from a judgment, entered upon a verdict for the plaintiffs in an action of ejectment, and from an order denying a motion for a new trial on the minutes.

The action was to recover the possession of a triangular piece of land in the city of Amsterdam, one foot wide, fronting on Grove street, and extending southerly about ninety-six feet to a point in the division line between plaintiffs and defendant.

The complaint alleged, in substance, that the defendant unlawfully removed the division fence, so as to take in this triangular piece of land, and thereby wrongfully got possession of the triangular piece of land, and retained possession of the same and withholds the possession from the plaintiffs. The answer denies the allegation of the complaint, alleges ownership of the land, and sets up adverse possession and practical location of the line in dispute.

The case shows that, on the 8th day of March, 1848, John L. Crane and others conveyed by deed to Benjamin C. French land in Amsterdam village, bounded as follows : Northerly by Grove street, easterly by lot conveyed to Daniel Lefferts, southerly by lots owned by Waterman Sweet, and west by lands of Benjamin C. French, 200 feet deep from center of Grove street and fifty-three and a half feet wide on said street.

On the 28th day of February, 1851, Daniel C. French conveyed by deed to Richard Burke land in Amsterdam, bounded as follows : Northerly by Grove street, easterly by Daniel Lefferts' lot, southerly by Waterman Sweet's lot, and westerly by a lane ; on the same day Richard Burke executed and delivered to French a mortgage, containing a recital that it was for a part of the purchase-money of said premises, describing the premises as situate in the village of Amsterdam, and bounded as follows : Northerly by Grove street, easterly by Daniel Lefferts' lot, southerly by Waterman Sweet's lot, and westerly by a lot of the party of the second part. The lot hereby conveyed is 200 feet deep from center of Grove street, and fifty-one feet wide on said street.

Burke died intestate in 1864, and in 1878 his children and heirs-at-law conveyed the premises to his widow, Margaret Burke, with the following description : Northerly by Grove street; easterly by a lot formerly owned by Daniel Lefferts; southerly by land formerly owned by Waterman Sweet, and westerly by a lane. Margaret Burke died in 1888, and by her will devised these lands to the plaintiffs, who, at the time of her death, were in possession of the land devised.

The defendant derived his title from Richard G. Snell by deed dated April 1, 1856, who derived his title from George Sanford and wife by deed dated February 28, 1839.

The land in the deed from Snell to defendant was bound northerly by Grove street; easterly by James W. Kline's lot; southerly by a stone wall, and westerly by Burke's lot, as the same was inclosed.

In 1879 Margaret Burke, the plaintiff's testatrix, erected a new house on her premises, and in that year or the next erected a fence on what is claimed by the plaintiffs as the true line.

In 1886 the defendant constructed a new fence between him and the plaintiffs, and the plaintiffs claim that fence was placed on their

land so as to inclose on the defendant's side the triangular piece in dispute.

The line fence between the parties had been divided, the northerly end from Grove street, southerly along the line in dispute, was maintained by the defendant, and the southerly end by the plaintiffs and those through whom they derive title.

Most of the testimony in the case was directed to the question of the true location of the line between the parties, and upon that subject resort was had to oral and documentary evidence, and the principal questions of law arising on this appeal grow out of the ruling of the learned justice in the receipt and rejection of evidence.

There was a sharp conflict of evidence over the question of the original location of the fence between the parties, and over the disputed question of the removal of the same from its original position at the time the defendant erected the new fence in 1886, and this court is urged by the defendant to reverse the determination of the jury upon the disputed question, on the ground of the alleged preponderance of evidence in favor of the defendant upon that subject, and reference is made to certain fixed, permanent and visible monuments, such as an elm tree, and the location of the old fence, in reference to it, which is urged as unmistakable evidence that the new fence was placed in the same position as the old one, which it is urged has been there for more than twenty years. But the evidence upon this point is not quite clear from conflict; and on the part of the plaintiffs it is urged, as evidence of the change of the location of the fence, that the defendant in erecting the new one removed a wall located by plaintiffs on their lands to retain the earth in position on their lot, and located the fence on the location of the same. On the whole, we think the evidence too conflicting to justify an interference with the verdict of the jury upon this disputed question of fact, as there is some evidence to support their finding, unless some well-settled principle of law was violated in the admission or rejection of evidence.

It is insisted, on the part of the appellant, that it was error to receive in evidence, under the defendant's objection, the mortgage given by Richard Burke to Benjamin S. French at the time of the conveyance by French to Burke. The mortgage was given to secure the purchase-money of the land described in and conveyed by the

deed, and was so expressed on the face of the instrument, and bore even date with the same. The deed gave the names of the adjoining owners to the land conveyed, but did not give the extent or distance on Grove street.

The mortgage gave the same abutting owners, and, therefore, necessarily described the same premises and contained the additional description of the extent of the line on Grove street. The mortgage was an instrument executed at the same time as the deed, and between the same parties, and under certain circumstances would, as between the parties to both instruments, operate as a defeasance of the grantee's title under the deed.

The question raised here on the admissibility of this mortgage as evidence is unlike that in *Armstrong* v. *Du Bois* (90 N. Y., 103), referred to by the learned counsel for the defendant. In that case it was sought to extend the provisions of a deed, explicit in its terms, which expressly excluded the lands described in the lease, which was sought to be read as a part of the deed, and the court says: "The language of the deed is clear and needs no interpretation; the deed is susceptible of no construction which will carry the premises in controversy;" and for these and other reasons not existing in the case at bar, the lease in that case was held inadequate and inadmissible. In this case the identity of the land covered by the deed and mortgage admit of no doubt. In that case the court says: "The lease is susceptible of a reasonable construction which will exclude the premises in controversy, and the deed is not susceptible of a construction which will include them."

In *Craig* v. *Wells* (11 N. Y., 315), also relied upon by the defendant on this point, the court says: "The deed, therefore, from Moses Phillips to his son William, upon which the questions in this case arise, is to be construed by itself; although the circumstances under which it was executed, and among them the simultaneous execution of the other deed and bonds; may no doubt be resorted to, for the purpose of aiding in its construction, so far as there may seem to be anything equivocal in its provisions."

The only thing equivocal in the deed in the case at bar is its failure to give the distance on Grove street, and the mortgage was offered to remove the doubt on that point. In *Dusenbury* v. *Hulbert* (59 N. Y., 544) it was expressly held that a deed conveying

the title to land and a mortgage given for the purchase-money at the same time must be taken as one instrument and read together as one act, and the court says: "The deed and Bowen mortgage executed at the same time are to be construed together as one instrument. They constitute an indivisible act."

Again, it is urged by the plaintiff that the mortgage was competent evidence as a declaration of Burke, the mortgagor in possession, and through whom the plaintiffs claim, as characterizing his title and actual occupancy under it. The declarations of the owner of real property in possession are competent as characterizing the extent of the possession. (*Abeel* v. *Van Gelder*, 36 N. Y., 516.)

It was no error, therefore, under the circumstances of this case, to allow the mortgage in evidence. "The rule is that declarations on this subject are admissible if made while the party so declaring is in possession of the premises in dispute," and it is not essential that they should have been made on the land. (*Swettenham* v. *Leary*, 18 Hun, 286; *Smith* v. *McNamara*, 4 Lans., 169.) Nor do we see any legal objection to the evidence of conversations between Sarah J. Burke and plaintiffs with Jackson, the defendant. It is quite true that such conversations could not be substituted for deeds in proof of title to land, nor could they establish title in one party or the other, but as they related to the location of the line in dispute between them while they were respectively in the possession of the lands, we think them competent as bearing, slightly perhaps, upon the location of the line.

On the whole case, I do not see that any substantial error was committed in the admission or rejection of evidence, and the jury having disposed of the disputed question of fact, there is no ground for interference by this court.

It follows that I cannot concur in the opinion of my brethren for a reversal in this case.

Judgment and order reversed, new trial granted, costs to abide event.